IN THE MATTER OF THE PETITION OF RICHARD WILLIAMSON, JR., RESPONDENT, TO VACATE AN ASSESSMENT FOR A SEWER IN SEVENTY-SECOND STREET, ETC., v. THE MAYOR, ETC., OF NEW YORK CITY, APPELLANTS.

*Assessment — application to vacate — error in copies of papers served — Chapter 321, Laws of 1865 — construction of — Chapter 580, Laws of 1872.*

Where, on an application to vacate an assessment, the copy of the petition served upon the corporation counsel differs in some respects from the petition presented to the court, but it does not appear that the corporation counsel has been prejudiced thereby, such defect cannot be urged on an appeal from an order vacating the assessment.

Chapter 321, Laws of 1865, providing that all sewers thereafter constructed, shall be in accordance with the general plan devised by the Croton aqueduct board for the sewerage of the particular district in which such sewer is to be laid, "subject to such modifications as may become necessary in consequence o⁻ alterations made in the grade of any street or avenue or part thereof in said district, or otherwise," does not require that such modifications should be made to appear on the general plan or map, or that new plans or maps showing them should be filed.

Where an application is made to vacate an assessment for laying a sewer, constructed in accordance with plans and specifications prepared and signed by the Croton aqueduct board, on the ground that it is not in conformity with the general plan for the district in which it is built, and there is no evidence to show whether or not the general plan has been modified by the board; *held*, that the application should be denied.

As the board, by the contract and the plans connected therewith, approved of the change in the plan of the sewerage for that district, their failure to decide upon such change, at a meeting called for that purpose, and to prepare and file a map thereof, was an "omission" within the seventh section of chapter 580, Laws of 1872, and the assessment was not thereby invalidated.

APPEAL from an order made at the Special Term, reducing an assessment for a sewer.

In the paper which was served upon the corporation counsel, and which purported to be a copy of the petition to be presented to the court, the fourth ground of objection was as follows :

" 4th. That no general plan or map has ever been made by the Croton aqueduct board for the sewerage of the particular district in which said sewer is constructed, to determine and show the location, course, size and grade of each sewer and drain below the

HUN—VOL. III.     9

surface and below the established grade of the streets and avenues in said district."

While in the petition actually presented, it was stated as follows:

"4th. That said sewers were not constructed in accordance with the general plan devised by the said Croton aqueduct board for the sewerage of the particular district in which such sewers are constructed."

*Wm. Barnes*, for the appellants.

*Neville & Andrews*, for the respondent.

DAVIS, P. J.:

The evidence in this case failed wholly to show that the petitioner was the owner of the lands affected by the assessment, at the time of filing his petition. Within the ruling of this court, *In the Matter of the Petition of Phillips*,[*] he failed to show any title to have the assessment vacated or reduced. The act of 1858 gives the remedy therein provided to " the party aggrieved ; " and the second section of that act shows that this phrase was used by the legislature as synonymous with the words, " the owners of property." [†]

The court below treated the petition, containing the objection upon which its decision was based, as regularly before it. It did not appear that any prejudice had arisen from the fact that the copy served on the corporation counsel did not contain that objection. If it had appeared that further notice was necessary, the court would doubtless have ordered a corrected copy to have been served, and postponed the hearing for that purpose. We think the irregularity in the copy served cannot be urged on this appeal.

The Special Term made its order upon the ground that the sewers, for which the assessment was made, were not constructed in conformity to the " general plan " devised and adopted by the Croton aqueduct board for the sewerage of the particular district. The plan provided for but one sewer in Seventy-second street,

[*] 2 Hun, 212.

[†] Laws of 1858, chap. 338, and Laws of 1874, chap. 312 ; Townsend v. Goelet, 11 Abb. Pr., 187.

located in the center of the street. Two sewers, one on each side of the street, of smaller dimensions, were constructed under contracts made by the board therefor, in conformity to plans connected with the contract and made part thereof. The second section of the act of 1865, * entitled, "An act in relation to sewerage and drainage in the city of New York," required the Croton aqueduct board to lay out the city into as many sewerage districts as they should deem necessary for the general purposes of the act, and to make maps or plans, containing various particulars, "for the purpose of exhibiting a complete plan of the proposed sewerage therein." The fourth section provided, that, "upon the completion of the map or plan for the drainage of any sewerage district, such map or plan shall be the permanent plan for the sewerage of such district, subject, however, to such modifications as may become necessary in consequence of alterations made in the grade of any street or avenue or part thereof in said district, or otherwise." The section then provides for the filing of copies of such complete plans "in the offices of the common council, the comptroller, street commissioner and city inspector." The eighth section of the act declares that, "it shall not be lawful, hereafter, to construct any sewer or drain in the city of New York, unless such sewer or drain shall be in accordance with the general plan devised by said Croton aqueduct board for the sewerage of the particular district in which such sewer or drain is proposed to be constructed."

To ascertain the true construction of the act of 1865, its several provisions are to be read together. The prohibition of the eighth section must be considered in connection with the provisions of the fourth section, which declares the general plans to be "*subject to such modifications as may become necessary in consequence of alterations made in the grade of any street or avenue or part thereof in said district, or otherwise.*" The eighth section is to be read as though it inhibited constructions otherwise than in accordance with the general plan of the district, as affected by the modifications allowed by the fourth section. If this be not so, then the slightest variation in the location, course, size, grade, or depth below present surface or established grades of streets, all of which under the second section of the act are to be shown upon

* Chap. 381, of the Laws of 1865.

the district maps, would be fatal to the regularity of the proceedings, and avoid all assessments.

When we consider the nature of the subject-matter of the law — the sewerage and drainage of a great city, by works to be constructed under ground, upon the efficiency of which must largely depend the health and well being of a great population — it can hardly be thought that the legislature meant to provide for plans and maps which should be so absolute and arbitrary in their character, that no sewer or drain could be lawfully constructed that did not, in all details and particulars, rigidly adhere to the exact indications of the plans and maps. Hence, the fourth section of the act provides for and authorizes such modifications in the sewerage (and not in the general plans) as the exigencies suggested therein may require. While "the general plan" is to be maintained, the special necessities that demand modifications in the work may be respected. There is no provision in the act that the modifications permitted by the fourth section shall be made to appear on the general plans or maps, or that new plans and maps showing them shall be filed ; nor does there appear to be anything to prevent the proper department to provide for the modifications in and by the contracts that may be made, and indicate them in the plans and maps that may accompany such contracts. Where this appears to have been done in good faith and without fraud on the part of the contracting board, it should be presumed to have been rightly done, until the contrary is shown. In this case no evidence was given, except of the bare facts, that in a portion of Seventy-second street, in which the general plan showed one sewer in the center of the street, the contract was for the construction of two smaller ones on the sides of the street. Whether there was or was not such occasion for this "modification" in that particular part of Seventy-second street, was left altogether to conjecture. The court below presumed, in the absence of evidence, that the alteration was not made by the board, by a proper decision, at a regular meeting. This was shifting the burden of proof upon the city in a case where it belonged to the petitioner, and depriving the corporation of the benefit of presumptions which the law makes in its favor where the acts of public officers are sought to be annulled to its injury. The proceeding, it is not to be forgotten,

is not against the officers or board by whom the act was done, and who may be called upon in such case to show their authority, but against a third person — the corporation, which is sought to be affected by the alleged illegality of official acts. We think the court below erred in holding the evidence, or rather the absence of evidence, sufficient to show the invalidity of the assessment.

The act of 1872 is broad enough, we think, to cover and cure the irregularity complained of. The Croton aqueduct board, certainly, by their contract and the plans connected therewith made, approved the changes in the sewerage of Seventy-second street. At most, it can only be said or presumed, in the absence of evidence, that they omitted to do this in the more formal manner of a regular meeting to decide that the changes should be made, and to prepare and file a plan or map thereof. That this was an " omission," within the seventh section of the act of 1872, * seems to have been decided by the Court of Appeals in *The Matter of the Petition of Ferdinand Mayer.* † In that case the sewers were constructed in streets, not included in a sewerage district plan adopted or filed previous to making the contract for the work. The court held that omission to be an irregularity, cured by the act of 1872. In this case it can only be urged that there was a departure from the plan, in the execution of the work, in particulars which would have been regular modifications but for the omission of certain requisite formalities. In *Astor* v. *The City*, Judge ROBINSON gave the same effect to the act of 1872 which the Court of Appeals have given; and such were our views in several cases decided at the present term. ‡ The order below should be reversed, with costs of the appeal, besides disbursements, and the motion denied, with ten dollars costs of opposing same in the court below.

DANIELS and BARRETT, JJ., concurred.

Ordered accordingly.

* Chap. 580, Laws of 1872.    † 50 N. Y., 504.
‡ In the Matter of Phillips; In the Matter of Keteltas; and see **Opinion of** ROBINSON, J., in Astor v. The City, in pamphlet.